


**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed March 24, 2006                                                                 **United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ELIZABETH ALLISON VELA, | § | CASE NO. 05-51081-RLJ-13 |
| | § | |
| DEBTOR | § | |

### MEMORANDUM OPINION AND ORDER

The Court considers the objection of Elizabeth Vela, the debtor, to the claim of M&I Bank. Hearing on the objection was held February 22, 2006. The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This Memorandum Opinion contains the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052.

#### Statement of Facts

On November 13, 2001, Ronald Stambek, Elizabeth Vela's former husband, entered into an installment contract and security agreement under which he purchased a 2000 Ford F150

pickup (the "Pickup") from Link Bros. Motor, Inc., the seller. The seller assigned the contract to M&I Dealer Finance, Inc.[1] M&I Dealer Finance, Inc. retained a security interest in the Pickup with the lien recorded at the Wisconsin Department of Transportation. At the time of the purchase, Vela and Stambek were living in Wisconsin; the sale took place in Rice Lake, Wisconsin. Vela did not sign the contract and was not reflected as buyer of the Pickup. The contract specifically states that Ronald Stambek is married to Elizabeth A. Stambek, that he is a married Wisconsin resident, and that the obligation evidenced by the contract is "being incurred in the interest of my marriage or family."

Vela and Stambek divorced in February of 2003. They apparently had moved to Arizona as the divorce proceedings were filed in Pima County, Arizona. Vela initiated the divorce proceedings by filing a petition for dissolution of marriage. The petition proposed that she get the Pickup and that she would be responsible for the indebtedness to M&I Bank, which was reflected to be "$25,000.00+." The divorce decree, titled Decree of Dissolution of Marriage, does not specifically assign possession of the Pickup or responsibility for the M&I Bank debt. Vela testified before this Court, however, that she took possession of the Pickup and assumed the indebtedness secured by the Pickup.

In March of 2004, Vela, still using the name Elizabeth Stambek, entered into a Motor Vehicle Retail Installment and Purchase Money Security Agreement by which she purchased a 2001 Honda S2000 coupe (the "Honda") from a dealership in Tucson, Arizona. This contract reflects that the Pickup served as a trade-in for a credit of $14,000. The $14,000 trade-in was

---

[1] The Court assumes that M&I Dealer Finance, Inc. is the same as M&I Bank, the party that filed the proof of claim objected to in this matter. No issue has been raised concerning M&I Bank's identity.

credited against the sales price on the Honda. The amount financed after the trade-in was $16,076.25. The contract reflects no payoff of any lien or debt against the Pickup.

Vela filed this chapter 13 bankruptcy case on August 23, 2005. M&I Bank filed its initial proof of claim on October 12, 2005, reflecting a secured claim of $21,523.95. M&I failed to attached any documentation to this claim, but the proof of claim recites that the debt was incurred on November 13, 2001, the date of the contract signed by Ronald Stambek. M&I Bank filed an amended proof of claim on the same date, October 12, 2005, and attached copies of the November 13, 2001, contract and a certificate evidencing perfection of its lien against the Pickup by recordation with the Wisconsin Department of Transportation.

M&I Bank amended its claim yet again by proof of claim filed February 21, 2006. This proof of claim included copies of the November 13, 2001, contract, the certificate of recordation of lien against the Pickup, the petition for divorce, and the divorce decree. This proof of claim was filed one day prior to the hearing on Vela's objection to M&I Bank's claim.

No evidence or testimony was provided at the hearing before this Court to explain how Vela used the Pickup as a trade-in on the purchase of the Honda without accounting for the lien held by M&I Bank.

## Discussion

Vela's objection raises two basic issues: (1) whether M&I Bank's claim should be allowed at all, secured or unsecured; (2) whether its claim should be allowed as a secured claim, secured in full or in part. M&I Bank, anticipating that its claim may not be allowed as a secured claim, raises the separate issue of whether a constructive trust should be assessed against the 2001 Honda as proceeds of the Pickup.

Liability on Pickup Loan

Vela claims she has no liability on the Pickup loan to M&I Bank because she was not a signatory party to the loan. A claim may be unenforceable against the debtor and property of the bankruptcy estate if the applicable state law so provides. *See* 11 U.S.C. § 502(b)(1). As M&I Bank's claim is based upon a loan made in Wisconsin for a vehicle purchased, titled, and the interest in it perfected in Wisconsin, the Court looks to Wisconsin law as the law of choice. *See St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 205 (5th Cir. 1996) (citing *Atlantic Mut. Ins. Co. v. Truck Ins. Exch.*, 797 F.2d 1288, 1291 (5th Cir. 1986)). Wisconsin is a community property state. *Gerczak v. Estate of Gerczak*, 702 N.W.2d 72 (Wis. Ct. App. 2005). Section 766.55 of the Wisconsin Family Code states in relevant part,

> (1) An obligation incurred by a spouse during marriage . . . is presumed to be incurred in the interest of the marriage or the family. *A statement separately signed by the obligated or incurring spouse at or before the time the obligation is incurred stating that the obligation is or will be incurred in the interest of the marriage or the family is conclusive evidence that the obligation to which the statement refers is an obligation in the interest of the marriage or family*, except that the existence of that statement does not affect any interspousal right or remedy.
> (2) After the determination date all of the following apply:
> . . .
>> (b) An obligation incurred by a spouse *in the interest of the marriage or the family* may be satisfied only from *all marital property* and all other property of the incurring spouse.

WIS. STAT. ANN. § 766.55 (2004) (emphasis added). Under Wisconsin law, a non-signing spouse is liable under a contract signed by the other spouse if the contract includes a marital purpose statement, as the contract does here. *See Sharpe Furniture, Inc. v. Buckstaff*, 299 N.W.2d 219 (Wis. 1980).; *Bank One, Appleton, NA v. Reynolds*, 500 N.W.2d 337, 338 (Wis. Ct. App. 1993).

Two other facts support Vela's liability to M&I Bank. First, Vela admitted at the hearing before this Court that she assumed the obligation to pay the Pickup loan as part of the divorce proceedings in Arizona. She took possession of the Pickup and in fact made payments on it. Second, Vela listed M&I's claim in her bankruptcy schedules as an undisputed deficiency claim. That Vela did not sign the contract does not rebut her liability to M&I Bank on the Pickup loan.

<u>Whether Claim is Secured or Unsecured</u>

On the question of whether M&I's claim is secured or not, the Court must conclude it is an unsecured claim. Vela used the Pickup as a trade-in almost a year and a half prior to filing this bankruptcy case. At the time she filed bankruptcy, she had no interest in the Pickup and, therefore, neither did the bankruptcy estate.

> As a threshold matter, consideration of whether a particular claim qualifies as a 'secured claim' within the meaning of section 506(a) begins with examination of whether the claim is actually 'secured,' meaning whether it carries with it any special collection right with respect to *specific items of property owned by the bankruptcy estate*.

4 COLLIER ON BANKRUPTCY ¶ 506.03 (15th ed. rev. 2005) (emphasis added). Section 506(a) states that an allowed claim is secured only to the extent "of the value of such *creditor's interest in the estate's interest in property*. . . ." If the estate has no interest in property, there can be no secured claim against it. *Id*. at ¶ 506.03[5] (emphasis added).

As stated above, no evidence was provided by the parties explaining how the Pickup was used as a trade-in without recognizing M&I Bank's lien. The Pickup is gone; no claim is made that it can be recovered by the estate. The bankruptcy estate has no interest in any property that secures M&I Bank's claim. *Id*. (*citing In re Gabor*, 155 B.R. 391 (Bankr. W.D. Va. 1993); *In re Garrison*, 95 B.R. 461, 462 (Bankr. E.D. Ky. 1988); *In re Byrd*, 92 B.R. 238, 239 (Bankr. N.D.

Ohio 1988); and others). The parties do not dispute the amount of M&I Bank's claim. M&I Bank's claim is an unsecured claim in the amount of $21,523.95.

M&I Bank's Claim of Constructive Trust

M&I Bank's request for a constructive trust was made seemingly as an afterthought. It was made in the prayer of its response to Vela's objection to claim. No written allegations were provided outlining Vela's conduct that would justify a finding of a constructive trust. As a constructive trust is remedial in nature, the Court looks to Texas law concerning the elements of a constructive trust. *In re Chanel Fin., Inc.*, 102 B.R. 549 (Bankr. N.D. Tex. 1988). The elements of a constructive trust under Texas law have been summarized as requiring a showing of (1) breach of fiduciary relationship or, in the alternative, actual fraud, (2) unjust enrichment of the wrongdoer, and (3) tracing of the property to an identifiable res. *Matter of Haber Oil Co., Inc.*, 12 F.3d 426, 437 (5th Cir. 1994). The courts have also stated that, under Texas law, fraud, either actual or constructive, must be present to justify imposing a constructive trust. *Burkhart Brob Luft Und Raumfahrt GMBH & Co. Kg v. E-Systems, Inc.*, 257 F.3d 461, 469 (5th Cir. 2001); *Exploration Co. v. Vega Oil & Gas Co.*, 843 S.W.2d 123, 127 (Tex. App.–Houston [14th Dist.] 1992, writ denied).

In short, the mere request for a constructive trust in the prayer of the response to the claim objection does not sufficiently raise a claim of constructive trust, especially in light of the fraud element. *See Matter of Haber Oil Co., Inc.*, 12 F.3d 426, 439 (5th Cir. 1994). At the hearing on the claim objection, M&I Bank again simply requested, with nothing more, that the Court impose a constructive trust against the Honda. It did not offer any evidence or detailed argument in support of this remedy. M&I Bank cannot be faulted for this, however. Resolving claims through

objections to claims is a summary procedure not suited to determining disputes over rights to property. M&I Bank asserted its claim of constructive trust defensively in its response to Vela's objection to its claim. A claim of constructive trust, which seeks an equitable interest in property, should be raised as an adversary proceeding. *Id.* at 437. It would be improper for the Court to make a dispositive ruling on the merits of M&I Bank's claim of a constructive trust. *See id.*

Upon the foregoing authorities, it is hereby

ORDERED that M&I Bank is allowed an unsecured claim in the amount of $21,523.95; it is further

ORDERED that the Court denies M&I Bank's request for a constructive trust without prejudice to reurging in accordance with the Rules of Federal Procedure as incorporated by the Rules of Bankruptcy Procedure.

### End of Memorandum Opinion and Order ###